IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUANA VENEGAS, | ) |
| | ) |
| Plaintiff, | ) No. 14 C 9829 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| AEROTEK, INC., | ) |
| | ) |
| Defendant/Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NAVISTAR DEFENSE, LLC, | ) |
| | ) |
| Third-Party Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Juana Venegas, sued her former employer Aerotek, Inc. and its client, Navistar Defense, LLC in the Circuit Court of DuPage County, Illinois, alleging: violations of the Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2601 et seq. against Aerotek (Counts I and II); pregnancy discrimination, employment agency discrimination, and failure to accommodate pregnancy under the Illinois Human Rights Act ("IHRA") 775 ILCS 5/2-102 et seq. against Aerotek and Navistar (Counts III, IV, V, and VI); promissory estoppel against Aerotek and Navistar (Count VII); breach of contract against Aerotek (Count VIII); negligent infliction of emotional distress against Navistar (Count IX); and tortious interference with contract against Navistar (Count X).

After defendants removed the case to this court, plaintiff settled with and dismissed with prejudice all claims against Navistar. Aerotek filed a third-party complaint against Navistar because Counts III, IV, and VI contain allegations that Aerotek is derivatively liable to plaintiff for Navistar's actions. In the third-party complaint, Aerotek alleges that if it is found liable to

plaintiff solely on a derivative basis, Navistar is liable to Aerotek under a common law implied indemnity theory. Navistar moved to dismiss the third-party complaint, but before the court could rule on that motion, Aerotek moved for summary judgment against plaintiff on all counts. For the reasons described below, Aerotek's motion for summary judgment is granted in part and denied in part. Navistar's motion to dismiss Aerotek's third-party complaint is granted.

## **BACKGROUND**[1]

Aerotek, a staffing agency, recruited plaintiff in March 2011 specifically to apply to Navistar for employment as an "inventory manager." Michael Mosher, an Aerotek Account Recruiting Manager, recruited plaintiff and was her main contact at Aerotek. Plaintiff applied and had her final interview with Navistar staff only. Aerotek had no input into whether plaintiff was hired. Plaintiff signed an Aerotek employment agreement on March 16, 2011. This was the only employment agreement she signed.

Plaintiff began working at Navistar as what it termed a "field services representative" on March 23, 2011, but Aerotek classified her as an inventory manager. In her agreement with Aerotek, she acknowledged that she understood that she was specifically hired to fill a position at Navistar and was an at-will employee. Navistar effectively controlled and supervised plaintiff's work, and it alone determined whether plaintiff continued to work for Navistar. For example: she worked at the Navistar facility, where Aerotek had no managerial presence; she reported to Jason Mann, a Navistar employee, for day-to-day activities; Navistar set her hours;

---

[1] The following facts are, unless otherwise specified, undisputed and come from the parties' Local Rule ("L.R.") 56.1 statements and responses. In addition to its response to plaintiff's additional facts, Aerotek also responded to plaintiff's responses to Aerotek's statement of facts. These responses are not allowed under L.R. 56.1 and will be ignored.

and Navistar dictated what work she did on a daily basis. Navistar had no complaints about plaintiff or her work product.

Plaintiff learned that she was pregnant with twins in April or May of 2012. She notified Mann around August 2012, and Mosher around October 2012 that she was pregnant.

On November 20, 2012, plaintiff asked Mosher about the possibility of taking maternity leave.[2] Plaintiff emailed Mann, at Navistar, on November 26, 2012, notifying him of her doctor's orders to go on bed rest, but he was out of town and did not respond to the email. A member of the Aerotek field support group told Mosher that plaintiff could request FMLA leave. On November 30, 2012, in an email, he told plaintiff that Aerotek could provide unpaid maternity leave under the FMLA, but that she needed to submit specific forms to obtain the leave. Also on November 30, 2012, plaintiff notified Mosher, through email: that she was set to be induced on December 21, 2012; she was "getting put on moderate bed rest [because of complications related to her pregnancy]" until then; that it was recommended that "she work days from home"; and that she "[had emailed Mann], but he ha[d]n't responded yet."

On December 3, 2012, Mosher informed plaintiff that he would send her the FMLA paperwork. Additionally, an FMLA request was submitted to Aerotek's Benefits Department on plaintiff's behalf. On the same day, plaintiff emailed Mann again, and again told him about her doctor recommending bed rest until her due date. On December 4, 2012, the Aerotek Benefits Department sent plaintiff the FMLA paperwork. Also on December 4, 2012, after consulting

---

[2]Although the parties disagree on whether Mosher or plaintiff initiated this conversation, the dispute is immaterial because both parties agree that Mosher initiated the FMLA leave conversation.

with Elizabeth Serrano, Navistar's Human Resources Manager, Mann and another Navistar employee decided to terminate plaintiff's Navistar assignment. Mann called plaintiff later that day to terminate her assignment, effective immediately. After that, he called Mosher to inform Aerotek that Navistar had terminated plaintiff's assignment, effective immediately. Mosher called plaintiff after receiving Mann's call, and confirmed that plaintiff "was done" with Aerotek because her assignment at Navistar had ended. No Aerotek employee was involved in Navistar's decision to end her assignment or knew about it until after it happened.

The next day, December 5, 2012, Aarati Doddanna, Aerotek's Employee Relations Manager, attempted to contact plaintiff to learn more about the situation, but was unable to reach her. Later that day, plaintiff's attorney, who had been hired within the last 36 hours, left Mosher a voicemail instructing Mosher to direct all calls to him. Plaintiff received the FMLA paperwork on December 6, 2012, but did not complete and return it because she thought she was "already in litigation." In a December 10, 2012, conversation with plaintiff's attorney, the attorney allegedly told Doddanna "that [p]laintiff may not want to return to work at Navistar."[3]

Serrano told Doddanna that Navistar could not accommodate plaintiff's request to work from home because it was concerned about "the confidential and propriety nature of [p]laintiff's work, but that it would accept plaintiff back after her maternity leave, if there was still a business need for [p]laintiff's position." It is unclear whether this was communicated to plaintiff through her attorney or otherwise. In any event, plaintiff's attorney allegedly later told Aerotek that

---

[3]This is one of several conversations that plaintiff claims occurred during settlement negotiations and therefore should be protected by Fed. R. Evid. 408. Because these statements by plaintiff's attorney were made to Aerotek to communicate plaintiff's unwillingness to return to work, rather than in connection with a potential settlement, Rule 408 does not apply.

plaintiff did not want to return to work at Navistar or Aerotek. Plaintiff never sought more (non-Navistar) work through Aerotek, nor did Mosher tell her she was entitled to seek other work through Aerotek.

On January 3, 2012, Aerotek denied plaintiff's FMLA leave request because plaintiff had not submitted the required paperwork. Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") on April 1, 2013. The IDHR issued a Notice of Dismissal for Lack of Evidence and Lack of Jurisdiction on August 19, 2014. Plaintiff filed the instant suit in the Circuit Court of DuPage County, Illinois on November 6, 2014. The case was removed to this court on December 8, 2014. Navistar was subsequently dismissed with prejudice from the case on May 7, 2015, after settling with plaintiff for an undisclosed amount.

## DISCUSSION

### I. Standard

A movant is entitled to summary judgment pursuant to Fed. R. Civ. P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

**II.     Legal Analysis**

As an initial matter, in Counts III, IV, and VI, plaintiff attempts to hold Aerotek liable for Navistar's actions, even though plaintiff settled with and released Navistar. Plaintiff attempted to preserve her right to sue Aerotek in her settlement agreement with Navistar through a reservation clause. Although Illinois law at one time allowed a plaintiff to maintain a suit against a principal for an agent's actions after the plaintiff settled with and released the agent, the Illinois Supreme Court ultimately rejected that previous precedent. Gilbert v. Sycamore Mun. Hosp., 156 Ill. 2d 511, 528-29 (1993) (holding that the plaintiff's negligence claim against the defendant hospital was extinguished when she settled with the defendant doctor, even though the settlement agreement included an express reservation of the plaintiff's "right to seek recovery" from the hospital). Plaintiff argues that this principle is not applicable to the instant case because Gilbert involved a tort claim, while the allegations in the instant case are for statutory civil rights violations only. This argument fails because civil rights violations are simply statutory torts. Jansen v. Packaging Corp. of America, 123 F.3d 490, 506 (7th Cir. 1997) (Posner, J. concurring and dissenting). Additionally, the Seventh Circuit has held that an employer is responsible for

6

its "own deeds" only and taking reasonable care to prevent or redress potential violations. Dunn v. Washington Cnty. Hosp., 429 F.3d 689, 690-91 (7th Cir. 2005) (holding that the defendant hospital was liable to its employee, a nurse, for the hostile work environment created by an independent contractor doctor).

Nonetheless, plaintiff continues to argue that Aerotek is liable for Navistar's actions, but she offers no case law to support her theory. The court has found no precedent that supports plaintiff's position that a staffing agency should be held liable for its client's actions when the staffing agency has no power over the client. Aerotek, in contrast, has offered several cases where the staffing agency was not held liable. See e.g., McQueen v. Wells Fargo Home Mortg., 955 F. Supp. 2d 1256, 1272-73 (N.D. Ala. 2013) (holding that Aerotek's conveying its client's wishes to terminate the plaintiff was not enough to make Aerotek liable); see also E.E.O.C. v. Olver Inc., 2006 WL 2076764, at *2 (W.D. Va. 2006) (granting the employment agency summary judgment because it did not commit an adverse employment action against the plaintiff when the agency's client fired the plaintiff after three days for alleged discriminatory reasons). Further, courts in this district have held that a temporary employment agency could not be liable for its client's discriminatory actions when the agency "serves as an intermediary between the plaintiff and the agency's client but exercises virtually no control or supervision over the plaintiff's day-to-day work." Shah v. Littelfuse Inc., 2013 WL 1828926, at *5-*6 (N.D. Ill. 2013) (Kendall, J.).

Plaintiff relies on Dunn, but its relevant holding states only that an employer must take reasonable care to prevent or redress potential Title VII violations. Dunn, 429 F.3d at 691. Here, plaintiff did not work at an Aerotek location, and plaintiff concedes that Navistar

effectively controlled and supervised her. No evidence has been submitted that Aerotek's decision-making was based on anything except Navistar's termination of plaintiff, which ended her contract. Consequently, Aerotek is not responsible for Navistar's actions, and Aerotek's motion is granted as to Counts III, IV, and VI. As a result, Navistar's motion to dismiss Aerotek's third-party complaint is granted. Thus, the remaining counts are plaintiff's claims for FMLA interference and retaliation (Counts I and II), IHRA employment agency discrimination (Count V), promissory estoppel (Count VII), and breach of contract (Count VIII).

### A.    Count I - FMLA Interference

Plaintiff alleges that Aerotek interfered with her FMLA rights by firing her before she could complete the FMLA certification paperwork. Aerotek argues that it is entitled to summary judgment because it is undisputed that plaintiff never submitted the FMLA paperwork.

The FMLA entitles an eligible employee to twelve workweeks of leave during any twelve-month period for certain qualifying reasons, including a serious health condition, such as a pregnancy, that incapacitates and prevents an employee from performing the functions of her position. 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.115(b). The FMLA prohibits employers from interfering with an employee's attempt to exercise any FMLA right. 29 U.S.C. § 2615(a)(1).

To prevail on her interference claim, plaintiff must show that: (1) she was eligible for the FMLA's protections; (2) the FMLA covered her employer; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) the employer denied her FMLA benefits to which she was entitled. See e.g., Burnett v. LFW Inc., 472 F.3d 471, 477 (7th Cir. 2006); Daugherty v. Wabash Ctr., Inc., 577 F.3d 747, 750 (7th Cir. 2009). An

employer may require an employee to document her condition before granting FMLA leave. 29 C.F.R. § 825.305(a). The employer must give the employee 15 calendar days to submit the documentation, and must promptly notify the employee, in writing, of the deadline. Rager v. Dade Behring, Inc., 210 F.3d 776, 778 (7th Cir. 2000). The only elements in dispute are whether plaintiff was entitled to FMLA leave, and was denied FMLA benefits to which she was entitled.

Aerotek claims that plaintiff "received the FMLA paperwork two days after [it was] sent to her, but that she made the conscious decision not to complete and return the paperwork, because she had hired an attorney and thought she was 'in litigation.'" Both parties agree that plaintiff was fired on December 4, 2012, and that she did not receive the FMLA paperwork until December 6, 2012. Plaintiff argues that this made the paperwork "completely devoid of any substance" and that the FMLA violation had already occurred.[4]

Aerotek argues that no reasonable jury could find that it interfered with plaintiff's FMLA rights because she was not entitled to any FMLA benefits since she did not submit the paperwork. Aerotek correctly notes that an employer may require certification from an employee's health care provider to confirm an employee's serious health condition, and may deny an employee's FMLA leave request if she fails to provide the certification in a timely manner. 29 C.F.R. §§ 825.305(a), 825.313(b); Smith v. Hope School, 560 F.3d 694, 700 (7th Cir. 2009). Aerotek, however, fails to expound on what constitutes a timely manner. 29 C.F.R. § 825.305(b) defines it as 15 calendar days from the employer's request for certification. The

---

[4]In its reply brief, Aerotek argues, for the first time, that plaintiff did not have standing to file an FMLA interference claim because she was already fired. Because plaintiff has not had the opportunity to respond to this argument, the court will not address it. Citizens Against Ruining the Env't v. E.P.A., 535 F.3d 670, 675 (7th Cir. 2008).

9

regulation also requires the employer to warn the employee in writing of the consequences of failing to return the certification within a timely manner. 29 C.F.R. § 825.305(d).

Plaintiff was not given the 15 calendar days because she was fired one day after Aerotek's request for certification, and two days before she received the necessary paperwork. Aerotek has demonstrated only that Mosher told plaintiff that "there was some paperwork that she had to fill out," but there is no evidence that plaintiff was aware of the deadline or that Mosher warned her about the consequences for not submitting the paperwork in a timely manner. Consequently, there are genuine issues of material fact as to whether plaintiff was entitled to FMLA leave or simply elected not to apply.

In addition, the record does not support Aerotek's argument that plaintiff did not want to return to work for either Navistar or Aerotek. Doddanna's affidavit, on which Aerotek relies, says only that plaintiff's counsel told Doddanna that plaintiff "may not want to return to work at Navistar." At her deposition, plaintiff denied knowing that her lawyer told Aerotek that she "did not want to work at Aerotek again." Nothing in the record definitively demonstrates plaintiff's refusal to return to either company. Consequently, there are genuine issues of material fact that preclude summary judgment on Count I.

The court, however, is unclear if there is any remedy available to plaintiff, especially in light of the fact that Navistar informed Aerotek that it was willing to rehire plaintiff after she completed her maternity leave if there was a position then available. If that offer was communicated to plaintiff, it appears that plaintiff may have been offered all of the relief to which she was entitled. The court will address this issue at the next status hearing.

### B. Count II - FMLA Retaliation

Plaintiff alleges that Aerotek retaliated against her for requesting FMLA leave. Aerotek argues that it is entitled to summary judgment because it did not take any adverse employment action and plaintiff did not engage in any protected activity. The FMLA protects employees from employers who attempt to retaliate or discriminate against the employees for exercising their substantive rights. 29 U.S.C. § 2615(a)(2). Specifically, "an employer is prohibited from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c); see also King v. Preferred Technical Group, 166 F.3d 887, 892 (7th Cir. 1999). "The difference between a retaliation and interference theory is that the first 'requires proof of discriminatory or retaliatory intent while [an interference theory] requires only proof that the employer denied the employee . . . her entitlements under the Act.'" Goelzer v. Sheboygan Cnty., Wisc., 604 F.3d 987, 995 (7th Cir. 2010) (quoting Kauffman v. Fed. Express Corp., 426 F.3d 880, 884 (7th Cir. 2005)).

Plaintiff is proceeding under the direct method of proof to prove her FMLA retaliation claim.[5] To do so, she "must demonstrate [that]: (1) [she] engaged in [a] statutorily protected activity; (2) [she] suffered an adverse action taken by [her] employer; and (3) there was a causal connection between the statutorily protected activity and the adverse action." Johnson v. Reichhold, Inc., 2010 WL 3385548, at *9 n.1 (N.D. Ill. 2010) (citing Tomanovich v. City of Ind., 457 F.3d 656, 662-63 (7th Cir. 2006)).

---

[5]Generally, plaintiffs may proceed under the direct or indirect methods of proof established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also Long v. Teachers' Retirement Sys. of Ill., 585 F.3d 344, 349 (7th Cir. 2009).

Aerotek focuses on whether plaintiff's claim met the first two elements, but this focus is misplaced. Aerotek concedes that plaintiff requested FMLA leave, which the statute protects. See 29 U.S.C. §§ 2615(a)(1)(2); see also Buie v. Quad/Graphics, Inc., 366 F.3d 496, 503 (7th Cir. 2004). There is no dispute that Aerotek terminated plaintiff. The Seventh Circuit has held that "termination is certainly an adverse employment action." Burks v. Wisc. Dept. of Transportation, 464 F.3d 744, 758 (7th Cir. 2006).

The more challenging issue is whether there was a causal connection between the first two elements. The Seventh Circuit requires that the plaintiff show that there is some "proof of discriminatory or retaliatory intent." Goelzer, 604 F.3d at 995 (7th Cir. 2010) (quoting Kauffman, 426 F.3d at 884). Based upon the evidence, a reasonable jury could not find that Aerotek had any discriminatory or retaliatory intent when it fired plaintiff. Aerotek had no input or control over Navistar's decision to end plaintiff's assignment. Plaintiff concedes that she was an at-will employee, whose employment contract with Aerotek was specifically to fill a Navistar position. The employment term specified in the contract ended when Navistar terminated plaintiff. Plaintiff has submitted no evidence that Aerotek had any discriminatory or retaliatory intent. Consequently, Aerotek's motion is granted as to plaintiff's FMLA retaliation claim in Count II.

  **C. Count V - IHRA Employment Agency Discrimination**

Plaintiff alleges that Aerotek committed IHRA employment agency discrimination by terminating her and not referring her to other Aerotek clients (Count V). Aerotek argues that it had no statutory obligation to refer her to other clients and, as a staffing agency, it was not

12

included in the IHRA's employment agency definition.[6] The IHRA prohibits employment agencies from failing or refusing to refer an employee based on unlawful discrimination. 775 ILCS 5/2-102(B).

Assuming that Aerotek is an employment agency, plaintiff fails to allege that Aerotek did not refer her to other clients for a "discriminatory reason." She does not present any evidence that she sought work from Aerotek after her Navistar assignment ended, nor does she have any evidence that Aerotek refused to refer her to other clients. Her employment agreement with Aerotek was not for Aerotek to find her a position, but to fill a specific position at Navistar. Also, she hired an attorney within one day of being fired. The attorney prohibited Aerotek from contacting plaintiff directly. This dampened any ability to determine if plaintiff could, or wanted to, be placed with another Aerotek client. Consequently, Aerotek's motion for summary judgment is granted as to plaintiff's IHRA employment agency discrimination claim (Count V).

### D. Counts VII & VIII - Promissory Estoppel & Breach of Contract

In Count VII plaintiff alleges a claim of promissory estoppel, and in Count VIII she alleges a breach of her employment contract. Both counts are based on emails allegedly sent by unknown Aerotek employees in the fall of 2012, allegedly indicating that Navistar had extended her assignment for six months. Aerotek argues that there were no modifications and that the controlling employment agreement is the one plaintiff signed when she was hired on March 16,

---

[6] The parties dispute whether a staffing agency qualifies as an employment agency under 775 ILCS 5/2-101(c). The court does not reach this issue, but assumes that Aerotek qualifies as one for purposes of the instant motion.

13

2011. Additionally, Aerotek argues that because plaintiff cannot produce the emails, the "best evidence rule" bars plaintiff from relying on their alleged contents.

The employment agreement clearly states that plaintiff "acknowledge[s] and understand[s] that [her] employment with AEROTEK is 'at will,'" and that plaintiff will be working at "Navistar . . . for a temporary period." Plaintiff concedes that she signed the agreement during her orientation, but argues that she did not see it again until her deposition. She argues that two emails from unknown Aerotek employees extended her employment until July 1, 2013. Besides plaintiff's own testimony, there is no evidence in the record that these emails exist. Plaintiff did not produce them, Aerotek could not find them in its own records, Navistar refused to release the "forensic image of the [laptop] Navistar (or any related entity) issued to [p]laintiff during the course of her employment,"[7] and there was no motion to compel Navistar's production of any documents relating to these emails.

Even if these alleged emails exist, and they came from someone at Aerotek who had the authority to extend her employment, plaintiff has not alleged or presented evidence that the emails altered the at-will terms of her employment. Therefore, even if her employment was extended, she could still be fired at-will, without notice. Further, there is no evidence that plaintiff detrimentally relied on these alleged promises.[8] Consequently, Aerotek's motion is

---

[7] Plaintiff alleged in her deposition that the emails were stored on her Navistar laptop.

[8] To establish a claim based on promissory estoppel under Illinois law, a plaintiff must show that: (1) the defendant made an unambiguous promise to the plaintiff; (2) the plaintiff relied on such promise; (3) the plaintiff's reliance was expected and foreseeable by the defendant; and (4) the plaintiff relied on the promise to its detriment. Newtown Tractor Sales, Inc. v. Kubota Tractor Corp., 233 Ill. 2d 46, 51-52 (2009). The reliance must be reasonable and justifiable. Id. at 60.

granted as it relates to plaintiff's promissory estoppel and breach of contract claims (Counts VII & VIII).

## **CONCLUSION**

For the foregoing reasons, the court grants in part and denies in part Aerotek's motion for summary judgment. Aerotek's motion is granted as to her claim for FMLA retaliation (Count II), IHRA pregnancy discrimination (Count III), IHRA discrimination and discharge based on gender and pregnancy (Count IV), IHRA employment agency discrimination (Count V), IHRA failure to reasonably accommodate pregnancy (Count VI), promissory estoppel (Count VII), and breach of contract (Count VIII). Aerotek's motion is denied as to her claim for FMLA interference (Count I). Additionally, Navistar's motion to dismiss Aerotek's third-party complaint is granted.

**ENTER:** **March 22, 2016**

                                                        **Robert W. Gettleman**
                                                        **United States District Judge**